In The
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TODD M. SCHULZE,** | : | |
| Plaintiff, | : | Civil Action No. **02-155E** |
| vs. | : | |
| **CLAYTON E. SCHULZE** and **PATRICIA SCHULZE,** husband and wife, | : : | |
| Defendants, | : | |
| vs. | : | |
| **TODD M. SCHULZE** and **BRANDI SCHULZE,** husband and wife; and **MR. T's RE-BAR, INC.,** | : : | |
| Counterclaim Defendants. | : | |

_____/

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES REGARDING BURDENS OF PROOF IN CASES INVOLVING BREACHES OF FIDUCIARY DUTY

### *Summary of Argument*

Once the existence of a fiduciary relationship is shown, the law is clear that it is

the burden of the fiduciary, in this case Clayton Schulze, to prove that his conduct was

fair, honest and equitable. The fiduciary relationship in this arises in two ways. First,

Clayton Schulze acted as an agent of Todd Schulze in applying for all patents and in

jointly exploiting the Slab Saver. Second, the relative position of the parties was such

that trust and confidence had been reposed by Todd Schulze in his father, under

circumstances where Todd Schulze was relying upon his father to protect his interests.

This equitable principal is found in the federal common law as well as in Pennsylvania law. There is no principled reason for not applying it to an inventorship dispute. In this case the individual who prepared and submitted the patent applications, Clayton Schulze, stood in a fiduciary relation to Todd Schulze, and it is alleged that Clayton Schulze abused that trust by insinuating his own name on to the patents. Under these circumstances, well settled principles of both Pennsylvania and federal law demand that the fiduciary, Clayton Schulze, bear the burden to demonstrate he did not abuse his position in having himself named as an inventor.

*Discussion*

I.   **CLAYTON SCHULZE STOOD IN A FIDUCIARY RELATION TO TODD SCHULZE AS REGARDS BOTH THE ADMINISTRATION OF THE PATENT APPLICATION PROCESS AND THE AGREEMENT TO JOINTLY EXPLOIT THE SLAB SAVER.**

A.   **Clayton Schulze voluntarily undertook fiduciary obligations with respect to the administration of the patent application process.**

(1)   **Clayton Schulze assumed fiduciary duties toward his son because he was acting as an agent for Todd Schulze with respect to the patent applications.**

Under Pennsylvania law, certain relationships are regarded as fiduciary in nature as a matter of law. One of those relationships is that of principal and agent, which is conclusively presumed to be one of special trust and confidence. *Basile v. H&R Block, Inc.*, 563 Pa. 359, 368, 761 A.2d 1115, 1120 (2000); *Young v. Kaye*, 433 Pa. 335, 342-343, 279 A.2d 759, 763 (1971); *Leedam v. Palmer*, 274 Pa. 22, 25, 117 A.2d 410, 412 (1922). Agents therefore owe fiduciary duties of loyalty, honesty and full disclosure to their principal. *Basile v. H&R Block, supra; Young v. Kaye, supra; Leedam v. Palmer,*

*supra.* It follows that "in all matters affecting the subject of the agency, the agent must act with the utmost good faith in furthering and advancing the principal's interests, including a duty to disclose to the principal all relevant information." *Basile v. H&R Block, supra,* 563 Pa. at 368, 761 A.2d at 1120, *citing Sylvester v. Beck,* 406 Pa. 607, 610-11, 178 A.2d 755, 757 (1962); *Young v. Kaye, supra.*

The fiduciary nature of the duties and responsibilities of an agent toward his principal are summarized in *Kribbs v. Jackson,* 387 Pa. 611, 129 A.2d 490 (1957):

> An agent owes a duty of loyalty to his principal, it is his duty in all dealings affecting the subject matter of his agency to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of this principal. . . . An agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profits to the principal. . . . All profits made and advantage gained by the agent in the execution of the agency belong to the principal. And it matters not whether such profit or advantage be the result of the performance of or the violation of the duty of the agent.

The elements which establish the existence of an agency relationship under Pennsylvania law are: (1) manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. *Basile v. H&R Block, Inc., supra,* 563 Pa. at 367, 761 A.2d at 1120, *citing Scott v. Purcell,* 490 Pa. 109, 117, 415 A.2d 56, 60 (1980); *B&L Asphalt v. Fusco,* 753 A.2d 264, 269 (Pa. Super. 2000); *Lapio v. Robbins,* 729 A.2d 1229, 1234 (Pa.Super. 1999).

The creation of an agency relationship requires no writing or other formalities, and authority to act as an agent can be implied rather than express. *Falconer v. Mazess, 403*

*Pa. 165, 169, 168 A.2d 558, 560 (1961); Lincoln Avenue Indus. Park v. Norley*, 450

Pa.Super. 621, 677 A.2d 1219, 1222 (1996); *Chalupiak v. Stahlman*, 368 Pa. 83, 88, 81

A.2d 577, 580 (1951); *Garbish v. Malvern*, 517 A.2d 547, 553 (Pa. Super. 1986);

Restatement (2d), Agency § 1 (1958). There does not even have to be an express

agreement to act as principal and agent, so long as one actually acts as agent for the other.

*Scott v. Purcell, supra,* 490 Pa. at 116, 415 A.2d at 60; *Smailich v. Westfall,* 440 Pa. 409,

269 A.2d 476, 480-81 (1970); *Falconer, supra* , 403 Pa. at 169, 168 A.2d at 560;

Restatement (2d), Agency § 1 (1958). "In establishing agency, one need not furnish

direct proof of specific authority, provided it can be inferred from the facts that at least an

implied intention to create the relationship of principal and agent existed."

*Commonwealth v. Maker*, 716 A.2d 619, 623 (Pa.Super. 1998).

The evidence in this case will show that Todd Schulze asked his father for

assistance in dealing with patent attorneys and the U.S. Patent Office, and in

administering the patent application process. This process contemplated and included

committing Todd Schulze to contractual obligations with patent counsel and legal

obligations to the U.S. Patent Office. It also included spending Todd Schulze's money.

Clayton Schulze expressly agreed to do these things, and he in fact did these things

(*albeit* in a manner which the Plaintiff maintains was in several respects self-serving and

dishonest).

At the outset, it was understood that Todd Schulze was to be in control of the

undertaking. Although the evidence will show that as time progressed Clayton Schulze

increasingly acted according to his own wishes, even when acting contrary to Todd

Schulze's instructions Clayton Schulze took pains to make Todd Schulze believe that Clayton was proceeding as Todd would direct.  For example, Clayton Schulze "advised" Todd Schulze to add Clayton Schulze and Brandi Schulze to the Stud Extension patent, but purported to leave the decision up to Todd Schulze, even while he directed Attorney Thomson to put all three names on the patent application.

Because Clayton Schulze was acting as an agent of Todd Schulze, he was a fiduciary of Todd Schulze with respect to the administration of the patent applications.

> **(2)     Clayton Schulze voluntarily assumed a position of special trust and confidence with respect to Todd Schulze when he agreed to handle the patent application process, under circumstances where he knew the Plaintiff was not in a position to protect his own interests and was relying upon the Defendant's honesty, integrity, skill and judgment.**

Even putting the agency relationship aside, Clayton Schulze undertook to represent his son's interest with regard to the patent applications under circumstances where he knew his son was in no position to protect his own interests, and that his son was relying upon Clayton Schulze's prior experience with patent applications and in dealing with lawyers.  The duties which Clayton Schulze undertook necessarily involved spending money on Todd Schulze's account, and committing Todd Schulze to legal obligations to Attorney Van Royen, Attorney Thomson, and the United States Patent Office.  These facts, and the fact the parties are father and son, bring the relationship between these parties within the definition of "relationship of trust and confidence" under Pennsylvania law, and bind Clayton Schulze to fiduciary duties of honesty and loyalty toward his son.

Although certain relationships are always deemed to be fiduciary in nature, that list is not exhaustive. There is no comprehensive list of all circumstances in which confidential relations will give rise to fiduciary duties.

> It is impossible to define precisely what constitutes a confidential relation. It is not restricted to any specific association of persons. In some instances, as between trustee and *cestui*, attorney and client, and guardian and ward, it is declared to exist as a matter of law; in others, as, for example, between parent and child, the existence of such relation is a question of fact to be determined from the evidence presented. *Leedom v. Palmer*, 274 Pa. 22, 117 A. 410; *In re Null's Estate*, 302 Pa. 64, 153 A. 137. In general it may be said that a confidential relation will be deemed to exist whenever the relative position of the parties is such that the one has power and means to take advantage of, or exercise undue influence over the other. *Darlington's Appeal, supra; Miskey's Appeal*, 107 Pa. 611; *Longenecker v. Zion Evangelical Lutheran Church,*[200 Pa. 567, 50 A. 244]. In such case the party in the superior position is obligated, legally as well as morally, to act with the most scrupulous fairness and good faith, and to refrain from using the trust and confidence reposed in him to secure an advantage for himself. *In re Null's Estate, supra*.

*McCown v. Fraser*, 327 Pa. 561, 564-565, 192 A. 674, 676 (1937), *cited with approval, Young v. Kaye, supra* (citations in original).

Although not dispositive, a familial relationship, such as that of father and son, is evidence that special trust and confidence has been reposed. *See, e.g., Biddle v. Johnsonbaugh, supra; Ruggieri v. West Forum Corporation, supra; Fiumara v. Fiumara, supra; Shepp v. Brown, supra*.

One possessed of or claiming special expertise or knowledge, when dealing with one known to lack such expertise, also assumes the higher responsibilities of a fiduciary. This is illustrated under the facts of *Young v. Kaye, supra*, where a tax advisor had allegedly induced an elderly man to transfer stock to "a nominee" (himself)

in order to avoid a lien by the Internal Revenue Service. The question was whether this transfer constituted a breach of any fiduciary duty between Young and his "tax advisor," Brooks. In this regard, the Pennsylvania Supreme Court held there was a fiduciary relationship:

> Though a man of sound mind, Young was an octogenarian at the time of the disputed stock transfer. He possessed no apparent knowledge of the intricacies of the federal personal and corporate income tax laws and had no independent advice on such matters, relying instead upon the trusted advice of Brooks, his 'tax consultant'. Moreover, Young often signed without question tax and other financial documents prepared by Brooks. The contract for the sale of Kinzua to Brooks was motivated by tax considerations brought to Young's attention by Brooks and the consideration given by Brooks was the assumption of an alleged tax liability. In these circumstances, there can be little doubt that Brooks was in a position to take advantage of Young.

*Young v. Kaye, supra*, 443 Pa. at 343, 279 A.2d at 763.

In this case, a father purported to be helping his son. Todd Schulze did not understand the patent process, and Clayton Schulze did. Todd Schulze had no independent source of advice regarding patent matters, and was moving from state-to-state as his construction business demanded. Todd Schulze therefore placed his trust in his father. His father accepted that trust, and undertook to advise and assist his son. This put Clayton Schulze "in a position to take advantage," just as Brooks had been in the case of *Young v Kaye*. This trust, justifiably reposed, Todd Schulze's dependence upon this father to protect his interests, and Clayton Schulze's promise to assist Todd, gives rise to a fiduciary relationship.

**B.    Clayton Schulze was also a joint adventurer with Todd Schulze as respects the agreement to jointly exploit the Slab Saver by licensing it to Fukuvi, USA, Inc., and was therefore a fiduciary as a matter of law.**

In Pennsylvania, there are some relationships which are held to be fiduciary as a matter of law.  The relationship between partners is a joint venture is one of these.

By statute in Pennsylvania, every partner in any joint venture is a fiduciary with respect to the partnership:

**§ 8334.  Partner accountable as fiduciary.**

(a)    General Rule. – Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

15 Pa.C.S.A. § 8334(a)

There is also a statutory duty imposed upon each partner to disclose all information pertaining to the business of the partnership to any other partner:

**§ 8333.  Duty to render information.**

Partners shall render on demand true and full information of all things affecting the partnership to any partner or the legal representative of any deceased partner or partner under legal disability.

15 Pa.C.S.A. § 8333.

This is a statutory expression of the common law, which holds that partners are fiduciaries of one-another.  "Joint adventures, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty.  . . .  Not honestly alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (N.Y. 1928)(Cardozo, J.), *quoted with*

approval, *William Goldstein Co. v. Joseph J. & Reynold H. Greenberg, Inc.*, 352 Pa. 259, 267, 42 A.2d 551, 555 (1945); *accord*, *Jackson v. Clemson*, 156 A. 540, 542 (Pa. Super. 1931)(joint adventurers are partners, and must "act with each other in the utmost good faith"), *see also*, *Clement v. Clement*, 436 Pa. 466, 260 A.2d 728 (1970) ("There is a fiduciary relationship between partners.").

## II.    WHERE THE CONDUCT OF ONE WHO ACTS AS A FIDUCIARY FOR ANOTHER IS CHALLENGED, THE FIDUCIARY BEARS THE BURDEN TO PROVE THERE WAS NO FRAUD AND HIS CONDUCT WAS FAIR, PROPER AND ABOVE-BOARD

The common law of both Pennsylvania and the United States holds that where one litigant claims against another who stands in a fiduciary relationship to him, it is the burden of the fiduciary to prove, by clear and convincing evidence, there was no fraud, and that he acted fairly, honestly and consistent with his duties of loyalty and candor.

"[O]nce a fiduciary or confidential relationship is shown to exist, the burden is shifted to the person who is in such relationship . . . to prove absence of fraud, and that the transaction was fair and equitable." *Ruggieri v. West Forum Corporation,* 444 Pa. 174, 180, 282 A.2d 304, 307 (1971) *citing Shydinski v. Vogt*, 406 Pa. 534, 537, 179 A.2d 240 (1962). This principle has been restated in various forms of words dozens of times. *See, e.g., Young v. Kaye,* 433 Pa. 335, 279 A.2d 759, 763 (1971); *Frowen v. Blank,* 493 Pa. 137, 145 , 425 A.2d 412, 416 (1981); *Corrigan v. Conway*, 269 Pa. 373, 112 A. 466 (1921); *In Re Estate of Clark*, 467 Pa. 628, 359 A.2d 777 (1979); *Thomas v. Seaman*, 451 Pa. 347, 304 A.2d 134 (1973); *Leedom v. Palmer,* 274 Pa. 22, 117 A.2d 410 (1922)(transaction must be shown to be "fair, conscientious and beyond reach of

suspicion"); *Biddle v. Johnsonbaugh,* 664 A.2d 159. 162 (Pa. Super. 1995)(and cases cited therein); *Shepp v. Brown*, 439 A.2d 178, 180 (Pa. Super. 1981).

The longstanding policy of the Commonwealth of Pennsylvania to place the burden of proof upon the fiduciary has been recognized by this Court as well, for nearly sixty years:

> Where the relationship between the parties is one of confidence and trust, . . . the party in whom the trust or confidence is placed is held to the strictest responsibility and accountability. The burden is upon said person to show that a transaction between himself and the individual, through whom he derives benefits, was fair and conscientious and beyond reach of suspicion. The rule is founded upon principles of public policy and is irrespective of any admixture of deceit, imposition, overreaching, or other causes of fraud.

*Popovitch v. Kasperlik*, 70 F.Supp. 376, 384 (W.D. Pa. 1947).

Indeed, this policy is found in federal common law as well. The United States Supreme Court, as well as lower federal courts, have long recognized and applied the principal that the fiduciary is in the best position to demonstrate the character of transactions between himself and one who is depending upon him, and the need to protect those who were taken advantage of under circumstances where they were not in a position to take care of themselves and trusted another.

In *Geddes v. Anaconda Copper Mining Co.*, 254 U.S. 590, 599 41 S.Ct. 209, 212 (1921), it was alleged that corporate directors had engaged in self-dealing and deception with respect to stock valuation, to the detriment of shareholders. When it came time to evaluate the strength of the evidence regarding the value of the stock, the Supreme Court held the lower courts were correct in placing the burden of proof on the directors:

The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a sale is involved the full adequacy of the consideration. . . . **This court has been consistently emphatic in the application of this rule, which, it has declared, is founded in soundest morality, and we now add in the soundest business policy.** *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 587, 588, 23 L. Ed. 328; *Thomas v. Brownville, etc.*, R. R. Co., 109 U. S. 522, 3 Sup. Ct. 315, 27 L. Ed. 1018; *Wardell v. Railroad Co.*, 103 U. S. 651, 658, 26 L. Ed. 509; *Corsicana National Bank v. Johnson*, 251 U. S. 68, 90, 40 Sup. Ct. 82, 64 L. Ed. 141.

*Geddes v. Anaconda Copper Mining Co.*, 254 U.S. 590, 599 41 S.Ct. 209, 212(1921)(emphasis added), *accord*, *McCandless v. Furlaud*, 296 U.S. 140, 56 S.Ct. 41 (1935); *Green v. Fund Asset Management, L.P.*, 245 F.3d 214, 227 n. 14 (3rd Cir. 2001).

Because Clayton Schulze stood in a fiduciary relationship to Todd Schulze in at least three respects, Plaintiff Todd Schulze respectfully maintains it is the burden of Clayton Schulze to clearly and convincingly show there was no fraud, and that he acted fairly and honestly, did not self-deal, and kept Todd Schulze fully advised as to all matters entrusted to him.  This includes matters pertaining to the patent applications and the parties' effort at the commercial exploitation of the "Slab Saver" patent.

//

//

//

III.   **WHERE ONE ACTING IN A FIDUCIARY CAPACITY ABUSES HIS POSITION OF TRUST SO AS TO INSINUATE HIS NAME ONTO A PATENT APPLICATION, IT MUST BE THE BURDEN OF THE FIDUCIARY TO PROVE HIS CONDUCT WAS FAIR, PROPER AND ABOVE-BOARD.**

A.   **Burdens of Proof in cases where misjoinder of a putative co-inventor is alleged usually depend upon whether the challenge to inventorship occurred before or after the patent issued, and which of the competing individuals was first named as an inventor.**

Under federal law, different standards of proof apply in cases where one of two or more named co-inventors on a patent wishes to establish he is the sole inventor.[1] Where a patent application is still pending, one challenging the status of another as inventor must bear the burden of proof by a preponderance of the evidence. *Environ Products, Inc. v. Furon Company,* 215 F.3d 1261 (Fed. Cir. 2000); *Eli Lilly and Company v. Aradigm Corporation,* 376 F.3d 1352 (Fed. Cir. 2004)(concurring opinion of Judge Lourie); *Morgan v. Hirsch,* 728 F.2d 1449 (Fed. Cir. 1984); *Archer v. Papa,* 265 F.2d 954 (Cust. & Pat.App. 1959); *see also, Paivinen v. Sands,* 339 F.2d 217 (Cust. & Pat.App. 1965)(in case involving priority of competing applications, preponderance of evidence standard applies).

However, where a patent has already issued, one wishing to challenge the inventorship of another must meet the more stringent "clear and convincing evidence" standard. *Price v. Symsek,* 988 F.2d 1187 (Fed. Cir. 1993); *Eli Lilly and Company v. Aradigm, supra* at 1358 (and cases cited therein).

---

[1]   This is distinct from a claim of non-joinder of an inventor. Non-joinder is not an issue in this case.

Judicial explanation of the reasons for applying different standards of proof is sparse. Older precedents make reference to a patent application submitted "in due form" by two or more people being "*prima facie* evidence" they are joint inventors. *See, e.g.,* *HBeidler v. Caps*, 36 F.2d 122 (Cust. & Pat.App. 1929). However, this does not explain why the *prima facie* evidence must be overcome to a higher standard of proof than that which is required in other civil actions.

In a more recent opinion, however, the United States Court of Appeals for the Federal Circuit has offered a much more thorough analysis of the issue, and articulated a complete rationale. In *Price v. Symsek, supra,* the Court found the different standards of proof were justified by what the Court called a "social disutility analysis." The theory is that before a patent issues, a dispute over inventorship is essentially between two individuals. At that stage, an erroneous determination against one litigant is no more or less harmful to the public interest than an erroneous determination against the other. However, once a patent issues, more important societal interests are implicated:

> An interference involving an already issued patent embraces the societal interests derived from the statutory presumption that an issued patent is valid. These interests require a standard of proof higher than a mere, or dubious, preponderance of the evidence.

*Price v. Symsek, supra* at 1193.

In the present case, the patent for the "Slab Saver" had already been issued when Todd Schulze filed his objection to the naming of Clayton Schulze as a co-inventor. Therefore, under normal circumstances Todd Schulze would have to prove that Clayton Schulze was not a co-inventor to a clear and convincing standard.

The patents for the Stud Extension, however, involve entirely different circumstances. Two patents for the Stud Extension were issued. The first patent, issued in Todd Schulze's name alone, was issued on November 23, 2004 (Patent No. US 6,820,390). A second patent issued on November 30, 2004, showing both Todd Schulze and Clayton Schulze as inventors. The patent listing Todd Schulze alone is therefore first-in-time, and Clayton Schulze, as "junior" claimant, would, under normal circumstances, have the burden to show his inventorship status.

Even if the patent naming Todd Schulze alone had not issued first, Todd Schulze had raised his challenge to Clayton Schulze's status as an inventor more than a year before either of the patents on the Stud Extension issued.[2] Therefore, even if it were Todd Schulze's burden to go forward with evidence to contradict inventorship on the part of Clayton Schulze, it would be the "preponderance of the evidence" standard which would normally apply.

As to the Square Tie Wire application, the matter is no longer before the U.S. Patent Office. The application has been abandoned. Therefore, the only relevance a determination of the true inventor of the Square Tie Wire will have to this litigation is to determine whether Clayton Schulze's prior representations to the Patent Examiners that he was a co-inventor were false, which would constitute a breach of his fiduciary duties toward Todd Schulze. Federal common-law burdens of proof regarding inventorship for

---

[2]    Clayton and Patricia Schulze filed their original Complaint on May 10, 2002. Todd Schulze filed his counterclaim challenging inventorship on February 24, 2003.

purposes of the issuance of patents therefore do not apply, and state law standards pertaining to breach of fiduciary duty must govern.

The above are the standards of proof one would normally have to meet. It is the Plaintiff's position, however, that this is not a normal case. In this case, the putative co-inventor whose *bona fides* are challenged was the individual who prepared and submitted the patent application, and he did so while under a fiduciary duty toward Todd Schulze. Under these circumstances, the Plaintiff respectfully maintains the principle that a fiduciary accused of breach of trust must demonstrate his conduct was honest and above-board must apply.

> **B.    Where the filing of an application was done by one putative co-inventor who stands in a fiduciary capacity to the other putative co-inventor, the public policy which demands that fiduciaries justify their actions finds application.**

The prohibitions upon self-dealing and deception by a fiduciary are based upon what the Pennsylvania Supreme Court has identified as "strong considerations of public policy," which "render inapplicable" the usual requirement that the party asserting wrongdoing bear the burden of proving it. *Young v. Kaye, supra*, 443 Pa. at 342, 299 A.2d at 763. "It is a rule founded on public policy, to prevent a conflict between interest and duty." *In re Tanner's Estate*, 218 Pa. 361, 67 A. 646 (1907).

As noted above, this policy also has deep roots in the federal system. The United States Supreme Court has recognized the placing of the burden to prove the honesty and fairness of the actions of a fiduciary upon that fiduciary as one of the "cardinal principles of equity jurisprudence." *Pepper v. Litton*, 308 U.S. 295, 245 60 S.Ct. 238, 306(1939).

The present issue is whether this "cardinal principle" of morality and sound business policy should be applied in a dispute over inventorship. This appears to be a question of first impression.

A diligent, exhaustive search of cases involving inventorship disputes reveals few opinions which include discussion of breaches of fiduciary duty one co-inventor may owe another. Historically, where the tort is alleged it is stated as a cause of action separate from the putative impostor's status as an inventor. Whether the fiduciary status of one co-inventor should affect the burden of proof has never been addressed. [3]

---

[3]     It does appear the time is coming when this issue will be decided. Counsel for the Plaintiff have found two recent, reported opinions where one putative inventor claimed a putative co-inventor stood in a fiduciary relation, and abused that relationship of trust in order to either exclude an inventor or have himself included as an inventor.

In *Chou v. University of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001), the Plaintiff, Joany Chou, was a research assistant for a professor at the University of Chicago, Bernard Roizman. Chou claimed she made a number of discoveries pertaining to the use of *herpes simplex* virus while at the University while working under Roizman. Chou claimed she presented her discoveries to Roizman, suggesting they should be patented, but Roizman allegedly disagreed. *Id.* at 1353. By that time, however, Roizman had allegedly already filed a patent application for one of Chou's discoveries, naming himself as the sole inventor. *Id.* In response to Roizman's application, the Patent and Trademark Office found two articles jointly written by Chou and Roizman, and cited them as prior art. Roizman responded with an affidavit that he was the sole inventor, and that Chou had only worked under his direction and supervision and was not an inventor. *Id.* Chou maintained she was at least a co-inventor.

When Roizman was issued a patent on the first discovery, Chou sued to have herself named either as sole inventor or as co-inventor. *In addition to* seeking declaratory judgment with respect to inventorship, she asserted fraudulent concealment and that Roizman had breached a fiduciary duty toward her to protect her interests as a named inventor. While this brings the facts of *Chou* close to those of the instant case, the District Court dismissed Chou's patent claim for lack of standing, on grounds she was obliged by an employment contract to assign to the University. The case is therefore of no instructional value to us here.

We are therefore left with a case of first impression. The Plaintiff respectfully maintains there is no principled reason why the equitable principle of placing the burden of proof on a fiduciary when a fiduciary relationship exists should be less applicable in a contest over inventorship than in the wide variety of important business, estate and land transactions to which the principle has been applied for more than a century.

In those inventorship disputes where patent law calls for the application of the familiar preponderance of the evidence standard, the case is just like any other civil action as respects the burden of proof. In such cases, there is absolutely no conflict between the policies of patent law and the generally applied equitable policy of shifting the burden of proof regarding honesty to the fiduciary.

Nor is there any reason to disregard the fiduciary doctrine in those situations where the greater public interest in having patent decisions rendered correctly is implicated (where a patent has already issued). The "social disutility analysis" articulated in *Price v. Symsek, supra* (and cases cited therein) demands clear and convincing evidence from the party challenging the *bona fides* of an inventor. The equitable doctrine which requires a fiduciary to demonstrate his actions were honest and

---

Footnote continued . . .

A second case, *University of West Virginia Board of Trustees v. VanVoorhies*, 278 F.3d 1288 (Fed. Cir. 2002), another research assistant alleged that his profession had breached a fiduciary duty owed to Mr. VanVoorhies while inducing Mr. VanVoorhies to list the professor as the co-inventor. Neither of the involved courts decided whether a fiduciary relationship existed. Rather, the District Court found that Mr. VanVoorhies had been fully informed of inventorship decisions, had himself made the patent application, and knew his professor would share in proceeds of the invention under a University patent policy, and there would therefore have been no breach of trust even if a fiduciary relationship existed. *Id.* at 1300.

above-board also demands proof to a "clear and convincing standard." The standard of proof will therefore be "clear and convincing evidence" in either case. The only difference is who will bear that burden.

The Plaintiff therefore respectfully maintains the equitable doctrine shifting the burden to justify his actions to a fiduciary can and should be applied to inventorship disputes in those cases where one putative co-inventor prepared and submitted the patent application while standing in a fiduciary position to the other co-inventor.

Respectfully submitted,

Peter N. Georgiades (Pa. I.D. No. 25554)
Greystone Legal Associates, P.C.
Birmingham Place - Suite 201
2313 East Carson Street
Pittsburgh, Pa. 15203
(412) 381-8100

Attorneys for the Plaintiff.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing "Plaintiff's Memorandum of Points and Authorities Regarding Burden of Proof in Cases Involving breaches of Fiduciary Duty" has been served upon counsel for Defendants Clayton Schulze and Patricia Schulze on July 1, 2005, as an email attachment and also by first class mail, postage prepaid, addressed as follows:

> Brian D. Fife, Esq.
> Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc.
> 2222 West Grandview Blvd.
> Erie, Pa.  16506-4509

Respectfully submitted,

Janice M. Colagrande
Paralegal