UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD M. SCHULZE,<br><br>        Plaintiff,<br><br>v.<br><br>CLAYTON E. SCHULZE and PATRICIA SCHULZE, husband and wife,<br><br>        Defendants,<br><br>v.<br><br>TODD M. SCHULZE and BRANDI SCHULZE, husband and wife, and MR. T'S RE-BAR, INC.,<br><br>        Counterclaim Defendants | C.A. No. 02-155E |

## DEFENDANTS' MEMORANDUM OF LAW ON BURDENS OF PROOF IN CASES INVOLVING BREACH OF FIDUCIARY DUTY

### Summary of Argument

The law provides that, under some circumstances, once a fiduciary relationship is established, the burden of proof may shift to the fiduciary to prove that his conduct was fair, honest, and equitable. In this case, the Plaintiff maintains that Clayton Schulze was a fiduciary to Todd Schulze in at least three ways, agent/principal relationship, "special relationship", and/or joint adventurer. It is our position that Clayton was not an agent of Todd's as there was never an agreement that a fiduciary relationship would be created with Todd controlling the undertaking. It was merely an attempted on behalf of Todd to reconcile with his father, plus use his father's contacts to advance the patent process.

Moreover, there is no "special relationship" between the parties that would give rise to a fiduciary relationship. Although Clayton and Todd are father and son, that fact alone is not enough to establish a "special relationship". Nor is the fact that Clayton had some knowledge as to how the patent application process worked. As for the joint venture, we would agree that Clayton and Todd Schulze were joint adventurers with regards to the exploitation of the slab saver by licensing it to Fukuvi, USA. However, the fiduciary relationship created by the joint venture is limited strictly to the Fukuvi licensing agreement and does not extend to any other aspect of their relationship.

## Discussion

I. **CLAYTON SCHULZE WAS NOT IN A FIDUCIARY RELATIONSHIP WITH TODD SCHULZE IN REGARDS TO THE ADMINISTRATION OF THE PATENT APPLICATION PROCESS.**

   A1. **Clayton Schulze was not acting a Todd's agent in the administration of the patent process, and therefore, no fiduciary relationship was created.**

The law is clear in Pennsylvania that the three basic elements for a principal-agent relationship: (1) manifestation by a principal that an agent shall act for the principal; (2) the agent's acceptance of the undertaking; and (3) the parties' understanding that the principal is to be in control of the undertaking. Basile v. H&R Block, Inc., 761 A.2d 1115 (Pa. 2000). An agency relationship may exist "only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." Smalich v. Westfall, 269 A.2d 476, 480 (Pa. 1970). The party asserting an agency relationship has the burden of establishing such relationship. Scott v. Purcell, 415 A.2d 56, 60 (Pa. 1980).

Not all acts on behalf of another give rise to an agency relationship:

2

> The special relationship arising from an agency agreement, with its concomitant heightened duty, cannot arise from any and all actions, no matter how trivial, arguably undertaken on another's behalf. Rather, the action must be a matter of consequence or trust, such as the ability to actually bind the principal or alter the principal's legal relations. Indeed, implicit in the long-standing Pennsylvania requirement that the principal manifest an intention that the agent act on the principal's behalf is the notion that the agent has authority to alter the principal's relationships with third parties, such as binding the principal to a contract.

Basile, at 1121.

In this case, the evidence will show that Todd Schulze's intent was not that Clayton work *for* him as his agent, but to work *with* him as his father. Todd was hoping that by working together on this project, he could reconcile his relationship with his father that had been non-existent for many years. Moreover, Todd knew that Clayton had some connections in the plastics business here in Erie, and he was hoping that Clayton would be able to find someone to make a mold and produce some samples of the design. Todd also knew that Clayton had some experience with trying to obtain a patent, and he wanted Clayton to help him obtain a patent for the device.

There was never an agreement between the two that a fiduciary relationship would be created with Todd being in control of the undertaking. It was quite simply Todd asking for Clayton's help and guidance in obtaining a patent on the "slab saver" device of which he had little or no knowledge of how to do. Furthermore, at the time that Clayton is assisting Todd in obtaining the patent, he is working under the assumption that he is a co-inventor due to his contributions to the design of the patent. Thus, he was not acting just for the benefit of Todd, but was working for the benefit of both of them.

Additionally, there was never an understanding between the parties that Todd was to be in control of the undertaking. Todd came to Clayton with little knowledge of the patent process and wanted Clayton's help and guidance through the process. The parties disagreed on the design of the samples during the production phase, as each had there own ideas as to what would work better. Eventually, the design of the "slab saver" patent contained in the application was Clayton's. As for the "Stud Extension" patent, Attorney Thompson was hired to handle the patent application process and not only forwarded patent documents to Todd at his residence, but also spoke to Todd on the phone regarding the patent application and the names to appear on the application. There was no agency relationship, as Attorney Thompson was handling the filing of the patent documents.

In the end, there was never an agreement to enter into a fiduciary relationship whereby Clayton would act as Todd's agent in preparing the patent application documents. Thus, Clayton was not Todd's agent with respect to the administration of the patent applications, especially when it is noted that counsel was hired to administer both patent applications.

### A2. There was no special relationship between Clayton and Todd Schulze which would give rise to a fiduciary relationship and duty.

A "special relationship" is one involving confidentiality, the repose of special trust or fiduciary responsibilities. See, Commonwealth v. E-Z-Parks, Inc., 620 A.2d 712, 717 (Pa. Cmwlth. 1993). It generally involves a situation where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence over the other. Estate of Evasew, 584 A.2d 910, 913 (Pa.

1990). A confidential or fiduciary relationship does not exist merely because one party relies on and pays for the specialized skill or expertise of the other party. eToll, Inc. v. Elias/Savion Adver. Inc., 811 a.2d 10, 23 (Pa. Super. 2002). Rather, the critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by "overmastering influence" on one side or "weakness, dependence, or trust, justifiably reposed" on the other side. Id. A confidential relationship is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power. Id.

In this case, the Plaintiff seeks to assert that Clayton Schulze was in a special position of trust and confidence, thereby creating a fiduciary relationship and duty to Todd Schulze. Although a familial relationship can create a fiduciary relationship, it does not do so as a matter of law. One would need to look at the facts of the case to determine if a fiduciary relationship was created by a father and son relationship. In this case, Todd and Clayton Schulze had not talked for many years prior to Todd coming to Clayton with his "Slab Saver" idea. In fact, working together on the "slab saver" project was meant to mend an estranged relationship. Thus, it is unlikely that Todd would come to his father, who he did not see "eye to eye" on many issues, and place him in a position of trust and confidence.

Additionally, Plaintiff attempts to assert that Todd came to Clayton for his expertise in the patent process. As the case law indicates, reliance on one's skill or expertise is not enough to create a fiduciary relationship. Incidentally, although Clayton

has attempted to patent other ideas in the past, this by no means makes him an expert in the patent process.

Most importantly, this is not a case in which Todd was in the position of weakness or inferiority to the extent that he placed complete trust in Clayton's handling of the patents. Todd was intimately involved in the creation, production, and patenting of the "slab saver" and "stud extension". Clayton's role was to either do the paperwork to get the application process moving forward or find someone who would do it for them. As the Plaintiff has indicated in his Brief, Todd was in control of the patent application undertaking. If this is true, than he was not in a position in which Clayton would take unfair advantage of him or exercise undue influence over him. Quite simply, Todd requested the help of his father to help mend a wounded relationship, and was never placed in the position where Clayton could take unfair advantage of him. It should be noted that with regards to the patent applications, not only did Todd sign both patent applications, but an attorney filed all the necessary documents for them to obtain the patents.

As such, there was no special relationship created by these parties such that a fiduciary relationship and duty was created.

      **B.**    **A joint venture relationship was created between Todd and Clayton Schulze in regards to the joint exploitation of the Slab Saver by licensing it to Fukuvi, USA, Inc.**

A joint venture is an association of persons or corporations who by contract, express, or implied, agree to engage in a common enterprise for their mutual profit. The essential elements of a joint venture are: (a) a joint proprietary interest in, and a right to mutual control over, the enterprise; (b) a contribution by each of the parties of capital,

materials, services or knowledge; and (c) a right to participate in the expected profits. McRoberts v. Phelps, 138 A.2d 439, 443-444 (Pa. 1958).

The Defendants do not dispute that a joint venture relationship was created between to Clayton and Todd Schulze with regards to the joint exploitation of slab saver with Fukuvi, USA, Inc. The Defendants further do not dispute that a joint venture relationship is a fiduciary relationship which holds the joint adventurers to the utmost good faith and must act toward his associate with scrupulous honesty. Snellbaker v. Herrmann, 462 A.2d 713 (Pa. Super. 1983). However, it is the Defendants position that the joint venture relationship is limited to the licensing of the slab saver to Fukuvi and does not apply to any other portion of this case.

## II. NOT ALL FIDUCIARY RELATIONSHIPS REQUIRE A SHIFTING OF THE BURDEN OF PROOF TO THE FIDUCIARY TO PROVE ABSENCE OF FRAUD

The Defendants would agree that in certain circumstances the law provides for a shifting of the burden of proof to a fiduciary to prove absence of fraud in a fiduciary relationship. "Once a fiduciary or confidential relationship is shown to exist, the burden is shifted to the person who is in such relationship . . . to prove absence of fraud, and that the transaction was fair and equitable." Ruggieri v. West Forum Corporation, 282 A.2d 304, 307 (Pa. 1971)(citing Shydinski v. Vogt, 179 A.2d 240 (Pa. 1962)). The Plaintiff provides a number of other cases which support this principle of burden shifting to a fiduciary. However, in most, if not all, of the cases cited by Plaintiff, the shifting of the burden of proof to the fiduciary once a fiduciary relationship was shown were in those cases in which the obligation imposed upon the fiduciary was contractual in nature. In other words, there was a specific transaction that occurred in which the fiduciary was involved and benefited, and the law provides that in order to protect the

other party to the fiduciary relationship, the fiduciary will have the burden of proving that there was no fraud and that the transaction was fair and equitable.

That type of breach of fiduciary duty and the requisite shifting of the burden that goes with it is not the same type of breach that we are dealing with in this case. It is the Defendants position that it is only in those cases involving a specific transaction that the burden of proof shifts. In this case, the Plaintiff, assuming a fiduciary relationship exists, wants Clayton Schulze to prove that there was no fraud and that he was honest in his involvement in the patent application process. This is not a transaction in which only Clayton was involved and benefited. The patent application process occurred over a period of time with the help of legal counsel, and the result was beneficial to both Clayton and Todd Schulze. This is not the type of transaction in which the fiduciary (Clayton) abused his power or committed fraud to benefit himself to the detriment of Todd Schulze.

As such, even though this Court may find that a fiduciary relationship did exist between Todd and Clayton Schulze, there is no requirement that the burden of proof shift merely because there is such a relationship. We do, however, reiterate that there was no fiduciary relationship between the parties, and therefore, any discussion of burden shifting is moot with regards to the patent application process.

III.   **THE INDIVIDUAL CHALLENGING THE INVENTORSHIP OF ANOTHER ON A PATENT HAS THE BURDEN OF PROOF, BY CLEAR AND CONVINCING EVIDENCE, REGARDLESS OF ANY FIDUCIARY RELATIONSHIP BETWEEN THE PARTIES**

   A.   **The burden of proof in cases of misjoinder of a putative co-inventor is by clear and convincing evidence.**

The granting of a patent raises a *prima facie* presumption that the named persons were the inventors of the patented process. Congoleum Industries, Inc. v. Armstrong Cork Company, 339 F.Supp. 1036 (1972). "The inventors as named in an issued patent are presumed to be correct." Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed.Cir. 1997), cert. denied, 520 U.S. 1277. This presumption may only be rebutted by showing that there was an improper misjoinder or nonjoinder of inventors by strong, clear and convincing evidence. Porter-Cable Machine Co. v. Black and Decker Mfg. Co., 274 F.Supp. 905, 913 (D.Md. 1967), aff'd 402 F.2d 517 (4th Cir. 1968), cert. denied, 393 U.S. 1063 (1969). "The burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence." Garrett Corp. v. United States, 422 F.2d 874, 880, cert. denied, 400 U.S. 951 (1970).

Defendants would agree with Plaintiff, in this case, that Todd Schulze has the burden of proving, by clear and convincing evidence, that Clayton Schulze was not a co-inventor of the "Slab Saver". Defendants would disagree with the Plaintiffs that there is a different burden of proof for patents that have not been issued and are objected to during the patent application phase.

Plaintiff relies on a number of cases for the proposition that where one challenges the inventorship of a patent while the patent is still pending, the burden of proof is preponderance of the evidence. However, this proposition is incorrect. The cases cited by the Plaintiff in which a preponderance of the evidence standard was accepted were in cases involving disputes over priority of the patent, and not issues of joint inventorship. In fact, in Eli Lilly and Company v. Aradigm Corporation, 376 F.3d

9

135 (2004), the court held that in a case in which there are co-pending patents and one contests the joint invention of the patent, the burden of proof is by clear and convincing evidence. "The clear and convincing burden of proof is applied to joint inventorship disputes because of a 'strong temptation for persons who consulted with the inventor and provided him with materials and advice, to reconstruct, so as to further their own position, the extent of their contribution to the conception of the invention.'" Id. at 1366 (citing Hess v. Advanced Cardiovascular Systems, Inc., 106 F.3d 976 (1997)).

Thus, in this case, Todd Schulze has the burden of proving, by clear and convincing evidence, that Clayton Schulze was not a co-inventor of the "Stud Extension" patent. The presumption is that the names listed on a patent are the true and only inventors, and the only way to remove the name of an inventor from a patent application or issued patent is to prove by clear and convincing evidence that they are not a co-inventor.

As for the Square Tire Wire, it is the Defendants position that a fiduciary relationship was not created between Todd and Clayton Schulze with regards to this patent. Furthermore, even if this Court finds that a fiduciary relationship did exist, the patent has been abandoned and never issued, thus the Plaintiff has not sustained any damages with regards to any alleged breach of fiduciary duty on the part of Clayton Schulze. Moreover, there can be no breach of fiduciary duty with regards to the patent application process if a patent has never been issued with Clayton's name appearing on it as a co-inventor.

**B.   The application of burden shifting with regards to fiduciary relationships does not apply in inventorship disputes.**

The Defendants disagree with the Plaintiff's assertion that there is "absolutely no conflict between the policies of patent law and the generally applied equitable policy of shifting the burden of proof regarding honesty to the fiduciary." As stated above, in patent law, there is a strong presumption that the inventors listed on an issued patent are the true and only inventors. Hess, supra at 980. The law is clear that in order to challenge the misjoinder of an individual on a patent, one must show by clear and convincing evidence that the named individual is not a co-inventor of the patented device. What Plaintiff now suggests would disregard that presumption and require Clayton Schulze to prove that which he already is, and that is a co-inventor on the patents at issue. Plaintiff's suggestion is in direct conflict of the policies of patent law and would be unfair and unreasonable to the Defendants.

Moreover, we must not forget the fact that Todd Schulze's signature appears on both of the patent applications for these patents, and that he never objected to Clayton's name appearing on the patent applications until Clayton filed suit against him. If Todd truly felt that Clayton was not a co-inventor of these patents, he would have objected to his name appearing on these patents when he signed the patent applications. Instead, he raises his objection in response to legal action and expects this Court to relieve him of his duty to prove Clayton was not a co-inventor on these patents.

It should also be noted that although Clayton was involved in the patent application process, both applications were prepared and submitted by legal counsel for Todd and Clayton Schulze. In fact, Richard Thompson, Esq. has indicated that he sent patent documents to Todd Schulze, including the patent application for the Stud

Extender, and even spoke to him on the phone regarding the true inventors of the patent. Thus, even if we were to assume that there was a fiduciary relationship between Todd and Clayton Schulze, Clayton Schulze did not use his status as a fiduciary to his benefit with regards to the patent application process, as legal counsel was involved and Todd was well advised as to the status of the patent application process.

The Defendants would agree that the standard of proof in inventorship disputes is clear and convincing evidence, and that in this case, the Plaintiff should have the burden, as required by law, to prove that Clayton was not a co-inventor of these patents. The principle of burden shifting has no application in inventorship disputes as it conflicts with the policies of patent law.

        Respectfully submitted,

        QUINN, BUSECK, LEEMHUIS, TOOHEY &
        KROTO, INC.

By _____
    Bryan D. Fife
    Pa. ID 83345
    2222 West Grandview Blvd
    Erie, PA 16506
    (814) 833-2222

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD M. SCHULZE,<br><br>      Plaintiff,<br><br>  v.<br><br>CLAYTON E. SCHULZE and PATRICIA SCHULZE, husband and wife,<br><br>      Defendants,<br><br>  v.<br><br>TODD M. SCHULZE and BRANDI SCHULZE, husband and wife, and MR. T'S RE-BAR, INC.,<br><br>      Counterclaim Defendants | C.A. No. 02-155E |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of July, 2005, the foregoing Defendants' Memorandum of Law on Burdens of Proof was mailed via U.S. first class mail to the following:

            Peter N. Georgiades, Esq.
           Greystone Legal Associates, P.C.
           2313 E. Carson St., Suite 201
           Pittsburgh PA 15203-2161

           By _____
                  Bryan D. Fife, Esq.